OPINION OF THE COURT
Stephen D. Aronson, J.
This case holds that (1) an ignition interlock device (IID) monitor has limited authority to transfer an IID monitoring case; and (2) a photograph posted on Facebook is insufficient to prove a person was drinking an alcoholic beverage without additional evidence.
The defendant, Leticia D. Astacio, was convicted of driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3) by a trial verdict rendered on August 22, 2016. Her sentence on that date included a written conditional discharge providing in pertinent part that she abstain from alcoholic beverages and comply with IID provisions.[1] The defendant was charged with violating the terms of her one-year conditional discharge by (1) violating IID requirements on three separate occasions, (2) failing to obey the law by engaging in conduct constituting a trespass, and (3) failing to abstain from the consumption of alcohol on two separate occasions. A hearing was held on March 3 and March 6, 2017. The attorneys were permitted to obtain a transcript of the testimony and to file written summations. Decision was reserved until March 27, 2017.
A total of five witnesses testified at the hearing—two prosecution witnesses and three defense witnesses. At the outset, the court notes that except as otherwise set forth in this decision, all of the witnesses were entirely credible, worthy of belief, and appeared to testify truthfully. At the risk of sounding too confident, I must say that while this case does pose some novel legal issues, long-standing principles of law make it actually easy to decide. As the longest presiding judge in the eight counties comprising the Seventh Judicial District, and having authored hundreds of decisions, I found that this case was not at all difficult or complex.
*174 IID Violations
The declarations of delinquency accuse the defendant of violating her IID requirements on three separate dates: (1) January 12, 2017 (alleging the defendant’s vehicle was started by an unknown female and later driven by the defendant without being turned off); (2) January 30, 2017 (alleging the defendant allowed an unknown passenger to blow into the IID to start the defendant’s vehicle, but shortly thereafter the defendant took a rolling retest); and (3) March 2, 2017 (alleging that the defendant’s vehicle went into lockout mode after she failed to report her vehicle for a required service). In all of these violations the defendant’s IID breath test was .00, and the defendant is not accused of drinking before driving.
On November 18, 2009, Governor David A. Paterson signed into law “The Child Passenger Protection Act of 2009,” better known as “Leandra’s Law.” This law requires the installation of breath alcohol ignition interlock devices in the motor vehicles owned or operated by persons convicted of DWI offenses who are sentenced on or after August 15, 2010. The Division of Criminal Justice Services (DCJS) has promulgated regulations (9 NYCRR part 358) governing the monitoring of compliance by persons ordered to install and maintain IIDs on vehicles they own or operate. A section of these rules governs the transfer of probation cases and conditional discharge cases between New York State and other states, as well as between counties within the State of New York (see NY St Div of Crim Justice Servs Mem No. 2010-14 [Dec. 3, 2010], Guidance for the Interstate and Intrastate Transfer of Ignition Interlock Cases). The Deputy Commissioner and Director of DCJS and author of the memorandum cited, supra, writes: “It should be noted that there is currently no provision in New York statutes for the intrastate transfer of judicial jurisdiction over a Condition Discharge case” (id. at 3 [emphasis added]). However, intrastate transfer of an IID case for monitoring purposes is considered where a defendant (1) resides in a county other than the jurisdictional county at the time of arrest/prior to sentencing, (2) expresses a desire to relocate to a county other than the jurisdictional county prior to sentencing, or (3) expresses a desire to relocate to a county other than the jurisdictional county following sentencing (id. at 2 [where references to “another county,” mean a county other than the jurisdictional one]). In intrastate transfer cases involving a sentence of conditional discharge, notification is provided to *175 the IID monitor in the sentencing court’s jurisdiction by the sentencing court; the monitor in the sentencing county contacts the monitor in the receiving court to advise that agency of the case (id,.). Clearly, the transfer of IID monitoring between counties within New York State is not contemplated where the offender is arrested, convicted and sentenced in his/her county of residence.
The defendant’s written conditions of conditional discharge state: “2. The defendant is to: report to Monroe County Probation (hereinafter ‘the monitoring authority’) as directed by the court or the monitoring authority; answer all reasonable inquiries by the monitoring authority; and notify the monitoring authority prior to any change in address, vehicle ownership or access for operation.” The credible evidence at the hearing showed that the defendant has continuously resided in the City of Rochester in Monroe County. There is no provision in the written conditions of conditional discharge authorizing the Ontario County monitor to substitute as the monitoring authority. There is no provision in the Vehicle and Traffic Law authorizing the Ontario County monitor to substitute as the monitoring authority. There is no provision in the New York Codes, Rules and Regulations governing the handling of ignition interlock cases authorizing the Ontario County monitor to substitute as the monitoring authority. There is no provision in the Monroe County Ignition Interlock Program Plan authorizing the Ontario County monitor to substitute as the monitoring authority (see Monroe County Ignition Interlock Program Plan). In the People’s written summation, there was no authority cited nor explanation given for the transfer of monitoring from Monroe County to Ontario County.
So, how did the Ontario County IID monitor get involved with monitoring this IID case, where the defendant was and still is a resident of Monroe County? The Ontario County IID monitor testified that she received a letter transferring the case to her without a court order. There was no other explanation given for the transfer of monitoring. The defendant testified that her initial contact with the Ontario County IID monitor included the requirement of a GPS tracking device. People’s exhibits 2 and 3 (the monitor’s notifications of IID violations to the court and the DA) contain a reference on the front page to the fact that the defendant was sentenced to a conditional discharge on August 22, 2016, from an “Other City Court,” but the third page of each exhibit (photo at 1) describes the court condi *176 tions as being from an Ontario County order. However, it was not an Ontario County order; it was a Monroe County order. In any event, the order of conditional discharge remained intact— Monroe County’s designation as the monitoring authority never changed. Accordingly, the declarations of delinquency based upon IID violations must be dismissed as juris ¿fictionally flawed.
Even assuming that the IID monitoring violations were reachable on the merits, the defendant would not be found to have violated two of the three. The credible evidence did not establish that someone other than the defendant blew into the IID to start her vehicle on January 30, 2017, and the credible evidence established that the defendant did not violate the service requirement on March 1, 2017, because she clearly was within the five-day grace period for having her IID serviced. The defendant may have been found to have circumvented the IID device on January 12, 2017;[2] nevertheless, her consequence for this isolated violation would have been minimal because her breath test on that day was registered at .00 on a rolling retest (the incident when the defendant took over the wheel when picked up by her daughter after an appearance at the Judicial Conduct Commission).
To the good people of Monroe County and beyond, including the defendant, whose voice under oath has now been heard: that is the law!
Marketplace Mall Restaurant Violations
The declaration of delinquency alleges that the defendant was observed to be intoxicated at a restaurant in Marketplace Mall and refused to leave an employee bathroom. The defendant is thereby accused of (1) violating the condition of her conditional discharge requiring her to abstain from the *177 consumption of alcohol; and (2) trespassing (Penal Law § 140.05).
The credible evidence showed that the defendant and her sister were escorted by a restaurant employee to an employee bathroom (which may have been the only available bathroom at the restaurant). After a brief time, three other women sought entry into the bathroom. The defendant and/or her sister recognized one or more of the women as acquaintances or friends of acquaintances. Shortly thereafter, the restaurant’s security guard was called upon to clear the women from the bathroom. Armed with pepper spray, he successfully persuaded the women to leave the bathroom. The security guard identified one of the women as the defendant. He testified that the defendant “needed support for balance,” “consistent with a person who was drinking alcohol,” and he opined that she was intoxicated. However, the credible evidence also showed that he did not smell an odor of alcohol about the defendant despite his being only five feet from her. The credible evidence showed that the defendant was at the restaurant for two to three more hours. The security guard did not observe the defendant holding a drink of any kind, and he did not see the defendant buy an alcoholic beverage. The credible evidence was wholly and totally insufficient to prove to this trier of fact by a preponderance of the evidence that the defendant had failed to abstain from an alcoholic beverage.
Penal Law § 140.05 defines the noncriminal violation of “trespass” as follows: “A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” Here, the credible evidence showed that the five women exited the bathroom after being asked to do so, were not asked to remove themselves from the premises, and were permitted to remain on the premises for a period of hours with no call to the police and no arrests made. The credible evidence was wholly and totally insufficient to prove to this trier of fact by a preponderance of the evidence that a legal trespass had been committed.
In summary, the evidence of these alleged violations may have constituted legally sufficient evidence of drinking and trespass to send someone off to jail in some countries on the planet, but not in a courtroom in the U.S.A.
Facebook Post—Alleged Drinking Violation
The declaration of delinquency alleges that the defendant violated the conditions of her sentence requiring her to abstain *178 from the consumption of alcohol as demonstrated by four photographs posted on Facebook. The photographs show the defendant standing at a table with family and friends on Thanksgiving evening. There was circumstantial evidence of what was contained in the defendant’s cup but no direct evidence that the defendant was drinking alcoholic beverages. Circumstantial evidence is defined in the New York Criminal Jury Instructions as “direct evidence of a fact from which a person may reasonably infer the existence or non-existence of another fact” (CJI2d[NY] Evidence—Circumstantial Evidence).
Although these photographs posted on Facebook may have given rise to an inflammatory reaction of public opinion, our laws require legally sufficient evidence that the defendant was failing to abstain from using alcoholic beverages. For example, in People v Shank (26 AD3d 812 [4th Dept 2006]), our Appellate Division was faced with an arrest of a person accused of drinking an alcoholic beverage or possessing an open container containing an alcoholic beverage in a motor vehicle. In People v Shank the arresting police officer testified that he observed an empty beer bottle in the defendant’s vehicle (26 AD3d at 814). The appellate court observed there was no evidence that the bottle contained alcohol nor was there evidence that the defendant was drinking from the bottle while in the vehicle located upon a public highway (id.). The appellate court dismissed the charge because there was legally insufficient evidence. Likewise, in this case, there was no evidence that the defendant was drinking alcoholic beverages, i.e., no witnesses to describe what was contained in the defendant’s cups in the photographs and, more importantly, no witnesses that observed the defendant drinking alcoholic beverages. To the contrary, the only evidence adduced about the events of Thanksgiving evening was testimony of the defendant and two witnesses, all of whom denied in a credible manner that the defendant was drinking an alcoholic beverage. The depictions in the photographs received in evidence, especially when considering the testimony of the witnesses, do not persuade this trier of fact by a preponderance of the evidence that the defendant failed to abstain from using alcoholic beverages. It is a fundamental right for a judge or jury to decide a case only after hearing and deliberating upon all of the evidence presented. This is a basic principle that our family members and friends in the armed services have fought and died on foreign soil to preserve.
*179 Conclusion
The declarations of delinquency are hereby vacated (see CPL 410.70 [5]).

. The IID conditions are required to be in effect during the term of the conditional discharge but in no event for less than six months. (See Vehicle and Traffic Law § 1193 [1] [c] [iii].) The conditional discharge in this case erroneously indicates the defendant’s IID requirement will not expire before August 22, 2016, an obvious typographical error. The order of conditional discharge is hereby amended, pursuant to the court’s inherent authority to correct its own orders, so that the expiration date for IID requirements is August 22, 2017.

. This raises an interesting issue not needed to be decided here. Keep in mind that the burden of proof in a criminal case is proof beyond a reasonable doubt; the burden of proof in a conditional discharge violation case is a preponderance of the evidence. The declaration of delinquency for the incident on January 12, 2017, alleges the defendant violated a condition of her sentence by committing an unclassified misdemeanor (Vehicle and Traffic Law § 1198 [9] [a]). During my 36 years on the bench, I cannot recall one instance where a declaration of delinquency alleging the commission of a crime hasn’t been preceded by an arrest, followed by a formal charging document. Here, there was no preceding charge brought against the defendant for this offense. Had there been, the defendant would have been entitled to all of the procedural due process rights afforded in any criminal case, including the requirement that she be proved guilty beyond a reasonable doubt.